UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) | Case No.: 12-CV-00523-LHK |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING MOTION FOR INJUNCTIVE RELIEF AND APPOINTMENT OF SBA AS RECEIVER UNDER 15 U.S.C. § 687C |
| NOVUS VENTURES II, L.P., | ) | |
| Defendant. | ) | |

On February 1, 2011, the United States filed a Complaint for Receivership and Injunction on behalf of its agency, the U.S. Small Business Administration ("SBA" or "Plaintiff"), against Defendant Novus Ventures II, L.P. ("Novus" or "Defendant"), a Delaware limited partnership that maintains its place of business and principal office in Cupertino, California. SBA seeks receivership of Novus, among other forms of injunctive relief, pursuant to Sections 308(d) and 311 of the Small Business Investment Act of 1958, as amended. *See* 15 U.S.C. §§ 687(d), 687c; ECF No. 1 ("Compl."). Before the Court is Plaintiff's Motion for Injunctive Relief and Appointment of SBA as Receiver Under 15 U.S.C. § 687c, filed on April 19, 2012. ECF No. 18 ("Mot."). The Court held a hearing on the motion on July 26, 2012. Having considered the parties' submissions and argument and the relevant law, and for the reasons discussed herein, the Court GRANTS Plaintiff's motion.

I.  BACKGROUND

A. Factual Background

1

The purpose of the Small Business Investment Act of 1958 (the "Act") is to improve and stimulate the national economy, and small business in particular, by stimulating and supplementing the flow of private equity capital and long-term loan funds that small businesses need for sound financing of their operations and growth.[1]  *See* 15 U.S.C. § 661.  Section 391 of the Act authorizes SBA to license non-bank financial institutions, as well as private companies including corporations, as Small Business Investment Companies ("SBIC"), which in turn provide capital to small businesses.  *See* 15 U.S.C. § 681.  Pursuant to Section 303 of the Act, SBA can provide financing to a SBIC through what is known as Participating Securities, a form of Leverage as defined in the Regulations at 13 C.F.R. § 107.1500 *et seq.*  *See* 15 U.S.C. § 683; 13 C.F.R. §§ 107.1100, 1500.  By issuing a Leverage instrument, SBA becomes a Preferred Limited Partner of the SBIC.  *Id.*  In addition, when a SBIC is licensed, the license application contains an acknowledgment that the SBIC will be operated in accordance with the Act and the implementing Regulations, both of which place several restrictions on SBICs, including, among others, in regard to their financing and business decisions.

Novus is a venture capital firm that invests in seed and early stage companies in technology industries.  *See* Decl. of Greg Lahann ("Lahann Decl.") ¶ 2.  Novus's General Partner is DT Associates II, LLC, of which Greg Lahann, Dan Tompkins, and Stewart Schuster are the Managing Directors.  Decl. of Stewart Schuster ("Schuster Decl.") ¶¶ 2-3.  On January 5, 2001, SBA licensed Novus as a SBIC pursuant to Section 301(c) of the Act, 15 U.S.C. 681(c), under SBA License No. 09/79-0433.  Decl. of Dianna L. Seaborn ("Seaborn Decl.") ¶ 10.  Pursuant to Section 303 of the Act, 15 U.S.C. § 683, and 13 C.F.R. § 107.1600 *et seq.*, SBA provided financing to Novus by purchasing $68,100,000 in Participating Securities, and thereby became Novus's Preferred Limited Partner.  Seaborn Decl. ¶ 12.  SBA has paid the entire amount of $68.1 million, plus prioritized payments of approximately $39,400,000, to the investor pool.  Seaborn Decl. ¶ 12.  In addition to SBA's financing to Novus, the Managing Directors have, collectively, personally invested over

---

[1] Section 308(c) of the Act, 15 U.S.C. § 687(c), empowers SBA to prescribe implementing regulations to carry out the provisions of the Act.  These implementing regulations are codified at Title 13 of the Code of Federal Regulations, Part 107 (the "Regulations").

2
Case No.: 12-CV-00523-LHK
ORDER GRANTING MOTION FOR INJUNCTIVE RELIEF AND APPOINTMENT OF SBA AS RECEIVER

$1,200,000 in Novus. Lahann Decl. ¶ 16. Novus' Limited Partners have also collectively invested a total of $42,126,117 in Novus. *Id.* However, as Novus's Preferred Limited Partner, SBA has priority over the private Limited Partners in liquidation, meaning, among other things, that SBA must be repaid all of its Participating Securities before any private Limited Partners may obtain any return of their capital. Seaborn Decl. ¶ 18.

Among its responsibilities, SBA monitors the operation of all SBICs, in the course of which it undertakes annual reviews of the SBIC's financial statements. In March 31, 2006, Novus's quarterly financial submission showed that Novus had a condition of "capital impairment" as defined under 13 C.F.R. §§ 107.1830-1850.[2] SBA sent notification via letter dated June 5, 2006, that Novus had a condition of capital impairment of 80.92%, which exceeded the allowable maximum of 60% under 13 C.F.R. §§ 107.1830-1850. Seaborn Decl. ¶ 15 & Ex. F. Pursuant to 13 C.F.R. § 107.1820(f), the letter directed Novus to cure the capital impairment within 15 days by increasing its regulatory capital by not less than $14,647,109, plus an amount equal to any additional unrealized depreciation and operating expenses incurred subsequent to March 31, 2006. *Id.* The letter also notified Novus that if it failed to cure its impairment, SBA would impose Restricted Operations remedies under 13 C.F.R. § 107.1820(f). *Id.*

Novus failed to cure its capital impairment in the time and manner required by SBA. *See* Lahann Decl. ¶ 10. Subsequently, SBA placed Novus on "Restricted Operations" status, imposing several restrictions, including a prohibition on new portfolio investments unless approved by SBA, prohibitions on distributions to any party other than SBA, and imposition of a 50% reduction in management fees. *Id.*; Seaborn Decl. Ex. F at 1-2. SBA also required Novus to submit financial information on a monthly basis, information on the status of each portfolio investment, a cash report, and any additional liquidity requirements needed to meet follow-on investments or current

---

[2] Capital impairment is the degree to which the regulatory capital of a SBIC has deteriorated because of accumulated losses. Generally speaking, the capital impairment percentage is calculated by adding the SBIC's undistributed net realized loss and net unrealized depreciation and dividing the result by the SBIC's private capital. *See* 13 C.F.R. § 107.1840; *United States v. ECC Partners, L.P.*, 820 F. Supp. 2d 654, 657 n.6 (D. Md. 2011). A capital impairment condition exists if the capital impairment percentage exceeds permitted levels set forth in the Regulations and varies depending on the percentage of equity capital investments made by the SBIC. *See* 13 C.F.R. § 107.1830(c)(2).

3

Case No.: 12-CV-00523-LHK
ORDER GRANTING MOTION FOR INJUNCTIVE RELIEF AND APPOINTMENT OF SBA AS RECEIVER

1    operating expenses. Seaborn Decl. Ex. F at 2. Novus complied with all of SBA's imposed

2    reporting requirements. Lahann Decl. ¶ 10; Decl. of David Gerogosian ("Gerogosian Decl.") Ex. B

3    at 2-5. From the sales of some of its holdings and sale of one of its portfolio companies, Novus

4    cured its capital impairment and was not impaired from September 2006 to August 2007. *See*

5    Lahann Decl. ¶ 11. However, Novus again became capitally impaired shortly after the market

6    crashed. *Id.*

7        By letter dated July 22, 2008, SBA notified Novus that it was transferring Novus from

8    operating status to liquidation status. Seaborn Decl. ¶ 17 & Ex. G. SBA also threatened to seek

9    receivership immediately, prompting Novus's General Partner to meet with SBA on September 10,

10   2008, to explore alternatives to receivership. Lahann Decl. ¶ 12. Shortly after the September 10,

11   2008 meeting, Novus provided SBA with a plan to wind down Novus, subject to SBA's approval

12   and discretion ("Wind Down Plan"). Seaborn Decl. ¶ 20 & Ex. I ("Wind Down Plan"); Lahann

13   Decl. ¶ 13. Pursuant to the Wind-Down Plan, executed on December 23, 2008, SBA agreed to

14   permit Novus's Managing Directors to manage the fund until it was completely liquidated and to

15   forbear from seeking receivership until December 1, 2009, in exchange for Novus's agreement to

16   provide SBA a signed order consenting to receivership. *See* Seaborn Decl. Ex. I at 3. The Wind

17   Down Plan projected returns that would exceed the amount owed to SBA. Lahann Decl. ¶ 13.

18       Novus had some initial success in executing its liquidation plan and was able to repay $28.6

19   million to SBA, which prompted SBA to allow Novus's General Partner to continue to manage the

20   fund's liquidation. Seaborn Decl. ¶¶ 12, 22. However, Novus failed to meet its projections and

21   plans for liquidation in 2010, 2011, and to date. In September 2008, Novus projected that it would

22   recover $40.9 million in 2010, whereas financial audits reveal that Novus's actual recovery for

23   2010 was only $3,466,108. *See* Seaborn Decl. Ex. D at 5P; *id.* Ex. J. Novus also projected in

24   September 2008 that it would recover over $86 million in 2011, whereas financial audits reveal that

25   Novus's actual recovery for 2011 was only $214,498. *See* Seaborn Decl. Ex. E at 5P; *id.* Ex. J. In

26   fact, Novus's condition of capital impairment has been growing increasingly more severe. Since

27   2009 to date, Novus has maintained a condition of capital impairment not only in excess of its

28   permitted 60%, but in excess of 100%, which is a condition known as "extreme capital

impairment." *See* 13 C.F.R. § 107.1820(b); Seaborn Decl. ¶ 19; McClintock Decl. Ex. 5. Based on Novus's Form 468 submissions from 2008-2011, *see* Seaborn Decl. Exs. B-E, Novus's capital impairment percentage was 101.09% at the end of 2008; 107.08% at the end of 2009; 116.31% at the end of 2010; and 121.19% at the end of 2011. Seaborn Decl. ¶ 19; Mot. Ex. H. Furthermore, even including the SBA-mandated reductions in management fees, from 2006 to date, the General Partner has paid itself at least $4,635,078 in fees from the limited partnership for its management of Novus, not including other expenses such as accounting and legal services fees.[3] Seaborn Decl. ¶ 21; Mot. at 13. Novus currently owes SBA $39.5 million in outstanding Leverage. Seaborn Decl. ¶ 12.

### B. Procedural History

On February 1, 2011, the United States filed a Complaint for Receivership and Injunction on behalf of its agency, the U.S. Small Business Administration ("SBA" or "Plaintiff"), against Defendant Novus Ventures II, L.P. ("Novus"), seeking preliminary and permanent injunctive relief to restrain Novus (all persons managers, partners, agents, employees etc) from: (1) making any disbursement or distribution of any assets of Novus; (2) using, conveying, encumbering in any fashion any assets of Novus, wherever located; and (3) from further violating the Act or the Regulations promulgated thereunder. Compl. at 8. The Complaint asks this Court to take exclusive jurisdiction of Novus and all of its assets and to appoint SBA as receiver of Novus for the purpose of marshaling and liquidating the assets of Novus to satisfy the claims of creditors as determined by the Court. *Id.*

Novus filed an Answer to the Complaint on March 13, 2012. ECF No. 5. Plaintiff filed the instant motion on April 19, 2012, ECF No. 18; Defendant opposed the motion on June 21, 2012, ECF No. 22; and Plaintiff filed a reply on June 21, 2012, ECF No. 34.[4] The Court granted the

---

[3] Defendant notes, however, that in addition to complying with SBA-mandated management fee reductions since 2006, in June 2011, the General Partner voluntarily reduced its fees by more than half and in March 2012 offered to reduce its fees to zero, although the SBA rejected this offer. Lahann Decl. ¶ 15.

[4] Plaintiff's reply brief exceeds the page limits imposed under the Civil Local Rules by more than 3 pages, and Plaintiff did not seek leave of the Court to file an oversized brief. *See* Civ. L.R. 7-3(c). In the future, failure to comply with the Civil Local Rule page limits will result in automatic striking of the excess pages.

5

Case No.: 12-CV-00523-LHK
ORDER GRANTING MOTION FOR INJUNCTIVE RELIEF AND APPOINTMENT OF SBA AS RECEIVER

parties' stipulated request to allow independent counsel of record for four of Novus's 95 limited partners in their individual capacities, John Skeen, Paul Klein, David Lundquist, and Dan Tompkins ("Limited Partners"), to: (1) enter a limited and special appearance in this action on behalf of Novus, in order to file a supplemental brief in support of Novus's opposition to the motion for injunctive relief and supplemental declarations; (2) participate in oral argument; and (3) participate in any appeal of the Court's decision on the motion. ECF No. 36. Pursuant to the Court's order, the Limited Partners filed a supplemental brief on July 5, 2012, ECF No. 38; and SBA filed its supplemental reply brief on July 16, 2012, ECF No. 40.

## II.  LEGAL STANDARDS

Section 311 of the Act, 15 U.S.C. § 687c, provides that, "[w]henever, in the judgment of the [SBA], a licensee or any other person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this chapter, or of any rule or regulation under this chapter, or of any order issued under this chapter, the [SBA] may make application to the proper district court of the United States or a United States court of any place subject to the jurisdiction of the United States for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, rule, regulation, or order, and such courts shall have jurisdiction of such actions and, upon a showing by the Administration that such licensee or other person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order, shall be granted without bond." 15 U.S.C. § 687c(a). The Act further provides that in any such proceeding for injunctive relief, "the court as a court of equity may, to such extent as it deems necessary, take exclusive jurisdiction of the licensee or licensees and the assets thereof, wherever located; and the court shall have jurisdiction in any such proceeding to appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed." 15 U.S.C. § 687c(b). Finally, the Act provides that "[t]he [SBA] shall have authority to act as trustee or receiver of the licensee. Upon request by the [SBA], the court may appoint the [SBA] to act in such capacity unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c).

Although there is no binding Ninth Circuit authority on whether injunctive relief is mandated, or merely permitted, under the Act upon SBA's showing of the predicate legal violation, courts that have considered the issue have almost uniformly concluded that some form of injunctive relief is required, although the precise scope of the injunctive relief remains a matter of equitable discretion. *See, e.g.*, *United States v. Trusty Cap., Inc.*, No. 06-CV-8170, 2007 WL 44015, at *6 (S.D.N.Y. Jan. 5, 2007) (citing cases); *United States v. Marathon Inv. Partners, LP*, 399 F. Supp. 2d 1, 3 n.1 (D. Mass. 2005); *United States v. Vanguard Inv. Co., Inc.*, 667 F. Supp. 257, 261 (M.D.N.C. 1987) ("The Court observes that the usual requirements for preliminary equitable relief are supplanted by the specific mandate of 15 U.S.C. § 687c."), *aff'd* 907 F.2d 439 (4th Cir. 1990) ("*Vanguard I*").

### III. DISCUSSION

Plaintiff's Complaint asserts a single cause of action for capital impairment in violation of 13 C.F.R. § 107.1830(c), which requires that Novus, as a licensee, not have a condition of capital impairment greater than 60%. Compl. ¶¶ 26-34. Plaintiff's motion for permanent injunctive relief seeks permanent injunctive relief under 15 U.S.C. § 687c, asking the Court to: (1) enjoin Novus from further violating the Act and its implementing regulations; (2) take exclusive jurisdiction of Novus and all of its assets, wherever located; and (3) appoint SBA as Receiver of Novus. Mot. at 2.

#### A. Permanent Injunction

SBA argues that, by virtue of its condition of capital impairment in excess of the maximum allowed impairment percentage of 60%, Novus is in violation of the Regulations at 13 C.F.R. § 107.1830(b). *See* 13 C.F.R. § 107.1830(b) ("If you have a condition of Capital Impairment, you are not in compliance with the terms of your Leverage."). SBA further argues that Novus is in violation of the Regulations at 13 C.F.R. § 107.507(a) as a result of its failure to comply with the requirements of its Participating Securities. *See* 13 C.F.R. § 107.507(a) ("Nonperformance of any of the requirements of any Debenture, Participating Security or Preferred Security, or of any written agreement with SBA," constitutes a violation of the Regulations.").

As described above, the Act provides that in the event SBA determines that one of its licensed SBICs is in violation of the Act or the implementing Regulations, SBA may apply to the appropriate federal district court for an adjudication of such a violation and for permanent injunctive relief. 15 U.S.C. § 687(d). Upon a showing of a violation of the Act or its Regulations, the license of the SBIC may be revoked. *See United States v. Marathon Inv. Partners, LP*, 399 F. Supp.2d 1, 2 (D. Mass. 2005). As demonstrated by the record, since at least July 2008, Novus's percentage of capital impairment has far exceeded its maximum permitted capital impairment percentage of 60%, as prescribed under 13 C.F.R. § 107.1830(c). Novus does not contest its capital impairment percentage. Accordingly, SBA has made the necessary showing that Novus is in violation of the Act and the implementing Regulations. As specifically mandated under 15 U.S.C. § 687c(a), SBA is therefore entitled to a permanent injunction. The Court therefore grants Plaintiff's request for a permanent injunction enjoining Novus from further violating the Act and its implementing Regulations.

### B. Receivership

The question remains, however, as to whether SBA should be appointed receiver of Novus pursuant to 15 U.S.C. § 687c. As described above, the Act authorizes the Court to "take exclusive jurisdiction of the licensee . . . and the assets thereof," to the extent deemed necessary, and confers jurisdiction to "appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed." 15 U.S.C. § 687c(b). The Act explicitly authorizes the Court to appoint SBA to act as receiver "unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c). SBA argues that (1) Novus has already consented to receivership, and (2) Novus has not shown that appointment of SBA as receiver would be inequitable or otherwise inappropriate, given that Novus's violation of the Regulations is on its own sufficient grounds for appointing SBA as receiver. *See* Mot. at 20; Reply at 14-18. Defendant argues in opposition that (1) Novus' consent was fraudulently obtained and should thus be void, and (2) SBA has not shown that receivership is necessary. *See generally* Opp'n at 9-22. Because SBA does not rely on Novus's consent in

seeking receivership, the Court addresses the parties' equitable arguments for receivership first before then turning to the issue of consent.

### 1. Equitable Factors

While the Act authorizes the Court to appoint SBA as receiver, it does not mandate such appointment. Rather, as courts have recognized, "appointing a 'receiver is an extraordinary equitable remedy,' which should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993); 12 Wright, Miller & Marcus § 2983, at 24); *see also Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) ("[T]he appointment of a receiver is considered to be an extraordinary remedy, and . . . should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)); *First Louisiana Inv. Corp. v. United States*, 351 F.2d 495, 497-98 (5th Cir. 1965) ("The appointment of a receiver, like the granting of a preliminary injunction is, in no small measure, a discretionary matter."); *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942) ("Receivership "is not to be resorted to if milder measures will give the plaintiff . . . adequate protection for his rights. . . . It is to be exercised sparingly and with great caution, and only under extreme and exceptional circumstances.") (internal citations omitted). Under Ninth Circuit law, "there is 'no precise formula for determining when a receiver may be appointed.'" *Canada Life Assur.*, 563 F.3d at 844 (quoting *Aviation Supply Corp.*, 999 F.2d at 316). Nonetheless, relevant factors for determining whether to appoint a receiver include the following: "(1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct[] by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* (quoting Moore's, § 66.04[2][b]; *New York Life Ins. Co.*, 755 F. Supp. at 292 (citing 12 Wright, Miller &

1   Marcus § 2983)) (internal quotation marks omitted) (alterations in original). In determining

2   whether to appoint a receiver, the Court "may consider a host of relevant factors," and "no one

3   factor is dispositive." *Id.* at 845. In short, the Court's equitable powers in determining whether or

4   not to appoint a receiver are "broad" in nature." *Id.*

5       In support of its request for receivership, SBA argues that it reviewed Novus's proposed

6   Wind Down Plan and projections prior to filing this action, and allowed Novus three years to

7   attempt to self-liquidate. Mot. at 12-15; Reply at 15. Novus has remained in a condition of

8   extreme capital impairment (greater than 100%) for more than three years and has repeatedly failed

9   to meet its proposed projections, and SBA argues that these facts alone justify appointment of SBA

10  as receiver.

11      Novus, along with four of its Limited Partners who were granted leave to file a special

12  appearance and supplemental brief in opposition to Plaintiff's motion, argues that receivership is

13  unwarranted under the circumstances. First, Novus argues that SBA has not alleged any fraudulent

14  conduct on Novus's part. Opp'n at 6. Second, Novus argues that "the evidence shows that the

15  value of Novus' portfolio is actually increasing substantially and should be enough to ensure that

16  the SBA's investment is returned in full, along with a return to private limited partner investors."

17  Opp'n at 13-14. To support this argument, Novus submits two valuation reports projecting that the

18  value of two of Novus's most significant investments, mBlox, Inc., and Pathwork Diagnostics, Inc.,

19  will increase significantly between now and the end of 2014 or 2015. *See* Timmins Decl. Ex. B;

20  Gerogosian Decl. Ex. B. Third, Novus argues that SBA has not shown that it would be more

21  successful in maximizing the value of Novus's assets than would Novus's Managing Directors.

22  Opp'n at 14-15. Novus argues that "the SBA has a terrible track record of maximizing the value of

23  the assets of SBICs that it places in receivership," due in large part to SBA's alleged lack of

24  expertise and knowledge in the companies and industries in which the SBICs are invested. *Id.* In

25  contrast to the SBA, Novus's Managing Directors are seasoned venture capitalists with specific

26  industry expertise and are thus in a better position to liquidate Novus's portfolio to maximize

27  returns. *See generally* Lahann Decl.; Decl. of Dan Tompkins ("Tompkins Decl."); Schuster Decl.

28  Moreover, Novus's Managing Directors have a stronger incentive than does the SBA to maximize

the return for all of Novus's investors, because not only have the Managing Directors invested a substantial amount of their own money (collectively, more than $1.2 million) into Novus, but also they want to protect the business relationships they have with the Limited Partners. Lahann Decl. ¶ 16. Furthermore, Managing Directors not only invest in Novus's portfolio companies, but also sit on the boards of these companies and actively participate in their management, and if a receivership is imposed, Novus's portfolio companies "will lose the valuable support and guidance of the Managing Directors." Opp'n at 16; *see* Gerogosian Decl. Ex. B at 10-17. Finally, Novus argues that it has formulated and has been executing a reasonable Wind Down Plan, whereas the SBA has failed to propose its own plan for operating Novus and for liquidating its assets. Opp'n at 16-17.

In reply to Novus's arguments, SBA argues that there is no basis in law for accepting Novus's own independent valuations of assets, which do not apply the SBA's special valuation criteria, as a basis for denying receivership. Reply at 17. Furthermore, SBA argues that even the two independent valuation reports submitted by Novus do not fully support Novus's argument that no receivership is warranted. *Id.* at 18. For example, one of the valuations notes that "the timing of these recoveries as stated early in this Report[] extend beyond the currently approved Wind up plan that Novus is operating under." Gerogosian Decl. Ex. B at 14. Thus, even Novus's own evidence confirms that the current liquidation plan is inadequate. Finally, SBA argues that neither Novus nor the Limited Partners explain how leaving Novus's current management in place would cure Novus's ongoing regulatory violations, which have persisted since 2006. Under the current management, Novus first entered a condition of capital impairment over six years ago, and since 2009 has maintained a condition of extreme capital impairment in excess of 100%. *See* Supp. Reply at 3-4. Furthermore, Novus's efforts to liquidate pursuant to its Wind Down Plan have been unsuccessful, as Novus has consistently recovered far less than its projections.

As noted above, the Act authorizes this Court to appoint SBA as receiver of any SBIC licensee in violation of the Act or its implementing Regulations, "unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c). Having considered the parties' arguments and evidence

11
Case No.: 12-CV-00523-LHK
ORDER GRANTING MOTION FOR INJUNCTIVE RELIEF AND APPOINTMENT OF SBA AS RECEIVER

presented, the Court is not persuaded that appointment of SBA as receiver for Novus would be "inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c); *cf. Marathon*, 399 F. Supp. 2d at 3 (granting SBA receivership upon finding, among other things, that the licensee had failed to address why appointing SBA as receiver would be inequitable). Here, although there are no allegations of fraudulent conduct on Novus's part, there is no dispute that: (1) SBA has a valid claim to a debt of $39.5 million in outstanding Leverage; (2) Novus first entered a condition of capital impairment in excess of 60% in 2006, over six years ago; (3) Novus has remained in a condition of not only capital impairment but extreme capital impairment since 2009, and its percentage of capital impairment has been steadily increasing; (4) SBA has forborne from seeking receivership until now, allowing Novus at least three years to attempt to self-liquidate under its Wind Down Plan; (5) Novus has been unable to meet its projections under its Wind Down Plan; and (6) SBA is entitled to seek injunctive relief, and specifically appointment of receivership, upon demonstrating Novus's violation of the Act or Regulations. In light of Novus's inability to cure its capital impairment condition over several years, despite extended opportunities to do so, SBA has adequately shown that its request for receivership is reasonable and would not yield an inequitable result.

Although Novus has explained why it believes receivership is not necessary, its arguments do not adequately identify any special circumstances that would render receivership inequitable. As SBA points out, courts have routinely granted injunctive relief and appointed a receiver to take charge of the assets of an SBIC on the basis of capital impairment and other similar violations of the Act and Regulations. *See Vanguard I*, 667 F. Supp. at 261; *Vanguard II*, 694 F. Supp. at 1227-28; *Norwood*, 273 F. Supp. at 240 n.8; *Marathon*, 299 F. Supp. 2d at 3 n.1. The Court finds that the facts of this record merit appointing the SBA as receiver. Accordingly, the Court takes exclusive jurisdiction of Novus and all of its assets, wherever located, and further appoints SBA as receiver of Novus, pursuant to 15 U.S.C. § 687c(b) and (c).

### 2. Consent

As an alternative basis for seeking receivership, SBA argues that Novus already consented to receivership as part of the 2008 Wind Down Agreement. Because the Court finds that the SBA

has shown entitlement to injunctive relief and receivership of Novus pursuant to 15 U.S.C. § 687c, the Court need not address Novus's argument that the consent was fraudulently obtained and thus void.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for injunctive relief and appointment of SBA as receiver under 15 U.S.C. § 687c. The Court hereby incorporates by reference the Proposed Order of Receivership filed by Plaintiff in conjunction with the motion. *See* ECF No. 18-12.

**IT IS SO ORDERED.**

Dated: August 8, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge